## PEOPLE v. DETROIT UNITED RAILWAY.

1. CONSTITUTIONAL LAW — MUNICIPAL CORPORATIONS — STREET RAILWAYS — REGULATION — IMPAIRMENT OF THE OBLIGATION OF CONTRACTS—FRANCHISES.

An ordinance requiring a street railway company to run cars by a continuous route on separate lines which intersect, and effecting an unnecessarily frequent schedule on parts of the line, and an infrequent schedule on other parts, is an impairment of the franchise of the company in which a clause was incorporated providing for transfers at the intersection, fixing the fare for a continuous trip over either route, and providing that the fare should not be reduced.

2. STREET RAILWAYS—ORDINANCES—REASONABLE REGULATION.

A clause in the franchise of a street railway company reserving to the municipal common council the right to make such

reasonable rules as may be deemed necessary to protect the interests, safety, welfare, or accommodation and running of cars for the public, does not authorize the enactment of an ordinance requiring a change of route over intersecting lines, and depriving the company of an extra fare from transferring passengers to other lines.

Certiorari to the recorder's court of Detroit; Connolly, J. Submitted January 8, 1908. (Docket Nos. 7, 9.) Reargued February 8 and 9, 1909. Decided May 26, 1909.

The Detroit United Railway was convicted of the violation of certain ordinances, and sentenced to pay a fine of $50. Reversed.

*John J. Speed* ( *Charles D. Joslin* and *John C. Donnelly*, of counsel), for appellant.

*P. J. M. Hally* and *Bernard Weadock* ( *Timothy E. Tarsney*, of counsel), for the people.

HOOKER, J. This record involves two appeals from convictions of the defendant under an ordinance of the city of Detroit. The defendant is a street railway company operating the tracks covered by these cases, constructed under franchises granted by the city on December 4, 1894, to Greene Pack and others. That ordinance authorized them to construct and operate street railways on various streets mentioned therein. We have to do with but two of them. One is called the "Cross-Town Line," and runs substantially east and west, the other started at the northerly city limits going south on Fourteenth and other streets to the center of business, and thence, in a roundabout course, it returned to the northerly limits of the city, forming a U-shaped route, crossing the Cross-Town line practically at right angles. These are for convenience denominated the "Warren Avenue line" and the "Fourteenth Street line," respectively. The ordinance provided for free transfers at these intersections, and the franchise was granted for 30 years, with a right to charge fare as

follows: Five cents for a single and continuous trip in any direction "over any one of the routes described," with the right to a transfer check good for a ride "over any other line or route if presented on the next regular car of such other route," etc.   The ordinance also provided that "the rates of fare as above provided shall not be reduced during the period of this ordinance without the consent of the grantees, their successors or assigns," and section 11 provides that:

"The powers, privileges and rights conferred and obligations imposed by this ordinance shall be deemed a contract, and continued to said grantees, etc., for the period of thirty years from and after the date of its adoption."

Section 19 provides:

"Whenever the common council shall decide that the establishment of a new route or the extension of any street railway line is necessary for public convenience and accommodation, it shall properly designate said route or extension and the terms and conditions under which it shall be constructed and operated, and shall offer the same to the grantees of this ordinance, giving them thirty days in which to accept the same and file a bond in the sum of ten thousand dollars for the construction thereof, and if accepted within the said period said grantees shall have one year thereafter in which to construct and put into operation said new route or extension."

Section 17 provides:

"The right is hereby reserved to the common council of the city of Detroit to make by ordinance such reasonable rules as may from time to time be deemed necessary to protect the interests, safety, welfare or accommodation, and running of cars for the public in relation to said railways; provided further, that the cars on each and every route shall be run not further apart than ten minutes, excepting between the hours of 10 p. m. and 5 a. m."

In 1904 the common council passed an ordinance entitled:

"An ordinance to regulate the running and operation of street cars on streets, within the corporate limits of the

city of Detroit, to promote the public safety, and to repeal all ordinances or parts of ordinances inconsistent herewith."

This is an ordinance of 20 sections, and contains many regulations. Among other requirements, it seeks to compel defendant to establish a new continuous route which embraces the Cross-Town line west of Fourteenth street on the Fourteenth street line south of Warren avenue, and it prescribes a penalty for noncompliance. These cases are prosecutions under this ordinance.

In my opinion there is little excuse for the prosecutions, of which the two involved in this cause are samples. Under the most elementary principles, and by the express terms of the ordinance, the defendant secured contract rights under the ordinance of 1894 to run two lines of street railway, one a cross-town line, and another running at right angles therewith, agreeing to give transfers at intersecting points. Now it is proposed to compel them to do more than this. They are asked to establish an additional route by putting on cars whose route shall be a combination of portions of both of said original routes. The effect would be to compel an unnecessarily frequent schedule on parts of the lines, or an infrequency of cars upon other parts, which would be likely to result in a greater inconvenience than the present method of transferring passengers. Furthermore, it would deprive defendant of its right to collect a second fare from passengers who should transfer to other lines intersecting Fourteenth street. The claim that the ordinance, in section 17, reserved power to the council to regulate the running of cars, is not overlooked. It would be an extraordinary stretch of judicial legislation to hold that either party supposed or intended that the council should have power to impose such duties and obligations on the company, which still has, and until the expiration of its 30-year franchise, will have, the right to run a cross-town line with transfers at Fourteenth street, and the duty of running cars upon the proposed route will have to be deferred until such time as

the city may be able to make a contract for such service. See 2 Comp. Laws, § 6447.

The ordinance is an infringement of the constitutional provision regarding the impairment of contracts. See Cooley on Constitutional Limitations (7th Ed.), p. 278, and cases cited.

The judgment should be reversed, and no new trial ordered. The defendant should recover costs of both courts.

BLAIR, C. J., and GRANT, MONTGOMERY, OSTRANDER, MOORE, McALVAY, and BROOKE, JJ., concurred.